1
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11

12   NOELLE D'ANGELO and ANTHONY          Case No.:  3:23-cv-00982-WQH-MMP
     D'ANGELO, individually and on behalf
13   of all others similarly situated,      **ORDER**

14                            Plaintiffs,

15            vs.

16   FCA US, LLC d/b/a DODGE,

17                            Defendant.

18

19   HAYES, Judge:

20        The matter before the Court is the Motion to Dismiss Plaintiffs' Class Action

21   Complaint ("Motion to Dismiss") filed by Defendant FCA US, LLC d/b/a/ Dodge. (ECF

22   No. 11.)

23   **I.     BACKGROUND**

24        On May 26, 2023, Plaintiffs Noelle D'Angelo and Anthony D'Angelo ("Plaintiffs")

25   initiated this action by filing a class action Complaint against Defendant FCA US, LLC

26   d/b/a Dodge ("Defendant"), alleging claims for violating the California Invasion of Privacy

27   Act ("CIPA"), California's Unfair Competition Law ("UCL"), and California's

28   Constitution regarding invasion of privacy, and alleging federal subject-matter jurisdiction

pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. (ECF No. 1.)

On August 7, 2023, Defendant filed the Motion to Dismiss. (ECF No. 11.) Defendant requests dismissal of the claims against it for lack of Article III standing and failure to state claims upon which relief can be granted.

On August 28, 2023, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 13.)

On September 1, 2023, Defendant filed a Reply in support of the Motion to Dismiss. (ECF No. 14.)

On March 20, 2024, Plaintiffs filed a Notice of Recent Decision Relating to Defendant's Motion to Dismiss Plaintiffs' Complaint. (ECF No. 16.)

On March 26, 2024, Defendant filed a Notice of Supplemental Authority in Support of its Motion to Dismiss Complaint. (ECF No. 17.)

## II.   ALLEGATIONS IN THE COMPLAINT

Defendant "is a multinational corporation headquartered in Michigan, that does business in California, and owns, operates, and/or controls the Website Dodge.com" (the "Website"). (ECF No. 1 ¶ 5.)

Defendant "allows Third Parties to wiretap and eavesdrop on the chat conversations of all its [W]ebsite visitors." *Id.* ¶ 10. To enable the wiretapping, "Defendant has covertly embedded a third-party's code into its chat feature that automatically records and creates transcripts of all such conversations." *Id.* ¶ 12. To enable eavesdropping, Defendant permits at least one independent third party, notably Salesforce, "to secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use for that Third-Party's own purposes transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal." *Id.*

Salesforce intercepts chat communications on the Website "while those communications are in transit, and this is accomplished because the imbedded code directs those communications to be routed directly to Salesforce." *Id.* ¶ 13. Once a chat message is sent, it is first routed through Salesforce's server, enabling "Salesforce to analyze,

interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services." *Id.* ¶ 14. Salesforce also collects certain data about users and their chat messages, including, inter alia, the user's account name, the total duration of the chat, the user's geographic location, the user's network or Internet Service Provider, the number of messages sent, the site the user was on before they came to the Website, and the amount of time between messages.

Defendant does not notify visitors that it allows Salesforce to intercept chat communications or obtain visitors' consent. Given the nature of Defendant's business, "visitors often share highly sensitive personal data with Defendant via the Website's chat feature." *Id.* ¶ 21.

Plaintiffs visited the Website within the statute of limitations period. Using "smart phones (cellular telephones with integrated computers to enable web browsing) and/or wifi-enabled tablets and laptops that use a combination of cellular and landline telephony," Plaintiffs "engaged with the 'chat' feature of the Website to communicate with Defendant." *Id.* ¶ 23. Plaintiffs' conversations with Defendant "were transmitted from 'cellular radio telephones' and/or 'landline telephones.'" *Id.* Defendant did not notify or obtain consent from Plaintiffs to secretly record their chat conversations or allow, aid, or abet Salesforce to intercept and eavesdrop on the conversations in real time.

Plaintiffs bring four claims against Defendant: (1) aiding and abetting violations of CIPA, Cal. Penal Code § 631(a); (2) violation of CIPA, Cal. Penal Code § 632.7; (3) violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) invasion of privacy under California's Constitution. Plaintiffs seek declaratory relief, injunctive relief, and damages.

## III.    CONTENTIONS

Defendant moves to dismiss Plaintiffs' claims against it for lack of Article III standing and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant contends that Plaintiffs have not alleged an injury-in-fact necessary for Article III standing or to seek injunctive relief. Defendant contends that Plaintiffs lack statutory

standing to pursue a UCL claim because Plaintiffs have not alleged a sufficient economic injury. Defendant contends that Plaintiffs fail to state a claim under § 631(a) because Plaintiffs consented to Defendant's conduct, liability does not apply when a website owner uses a third-party software tool in the operation of its own website, and Plaintiffs failed to allege any actionable "contents" were recorded or transcribed. Defendant contends that Plaintiffs also fail to allege sufficient factual detail to state a claim under § 631(a). Defendant contends that Plaintiffs' § 632.7 claim fails as a matter of law because the provision does not apply to internet communications. Defendant contends that Plaintiffs fail to state an invasion of privacy claim because they have not alleged a sufficiently serious invasion of privacy or reasonable expectation of privacy in their chat communications.

Plaintiffs contend that the allegations that Defendant harmed their interest in privacy by allowing a third party to collect and use their personal information without consent alleges a sufficient injury to confer Article III standing and to seek injunctive relief. Plaintiffs contend that they have alleged a sufficient economic injury to establish UCL standing. Plaintiffs contend that they plausibly alleged that Defendant violated § 631(a) by allowing Salesforce to eavesdrop on Plaintiffs' chat conversations without their consent. Plaintiffs contend that the intercepted chat messages are contents within the meaning of § 631(a), and that Salesforce qualifies as a third-party eavesdropper. Plaintiffs contend that they state a claim under § 632.7 because the provision can be applied broadly to cover computer equipment. Plaintiffs contend that they adequately alleged an invasion of privacy claim.

## IV.    LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to

invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). However, the court does not accept "the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

The Article III standing doctrine limits federal court jurisdiction. *See La Asociacon de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61). The party invoking federal jurisdiction bears the burden of establishing that the standing requirements of Article III are satisfied. *Spokeo*, 578 U.S. at 338.

## B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## V.    JUDICIAL NOTICE AND INCORPORATION-BY-REFERENCE

Defendant requests that the Court take judicial notice and/or incorporate-by-reference seven documents attached as exhibits to the Declaration of Tiffany B. Hunter. (ECF Nos. 11-1, 11-2.) The exhibits include: (1) a copy of the Website's privacy policy in effect between March 15, 2021 and December 31, 2022; (2) a copy of the Website's privacy policy effective January 1, 2023; (3) a screenshot of the Website's homepage on June 1, 2022; (4) a screenshot of the Website's initial cookie disclosure on June 1, 2022; (5) a screenshot of the Website's chat feature icon, last accessed August 2, 2023; (6) a screenshot of the Website's chat feature initial prompt, last accessed August 2, 2023; and (7) a redline comparison of the Complaint in *D'Angelo v. FCA*, 3:23-cv-00982-WQH-JLB (S.D. Cal. 2023) and the complaint in *D'Angelo v. Nissan*, 3:23-cv-00980-AJB-AHG (S.D. Cal. 2023). The copy of the Website's privacy policy in effect between March 15, 2021 and

December 31, 2022 and the screenshots of the Website's homepage and initial cookie disclosure were obtained through a publicly available internet archive tool, the Wayback Machine.

Plaintiffs object to the Court taking judicial notice and incorporating by reference the requested documents. Plaintiffs contend that Defendant is attempting "to avoid discovery by submitting a self-serving attorney declaration with cherry picked exhibits and a request for judicial notice of the same." (ECF No. 13 at 16 n.1.) Plaintiffs contend that the Hunter Declaration, which "purport[s] to describe the user experience when interacting with the Website and the chat feature," is "materially inaccurate." *Id.* at 14–15. Plaintiffs request that the Court "not adopt [the] factual findings" of the exhibits, but "simply acknowledge[] their existence and contents." *Id.* 16 n.1 (quotation omitted).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* Judicial notice permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute"—i.e. if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A district court must clearly specify what fact or facts it judicially notices. *See Khoja*, 899 F.3d at 999. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. The doctrine permits courts to consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphic Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002)).

The Court takes judicial notice of the two versions of the Website's privacy policy, the screenshots of the Website's homepage and initial cookie disclosure on June 1, 2022, and the screenshots of the Website's chat feature icon and chat feature initial prompt last accessed August 2, 2023. The existence of the privacy policies and webpages are judicially noticeable facts because they appear on publicly available websites and their authenticity cannot be reasonably questioned. *See Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of a website's privacy policy and webpages); *Erickson v. Nebraska Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the [Internet Archive's] Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). However, because Defendant does not identify the dates on which the Website's homepage, initial cookie disclosure, chat feature icon, or chat feature initial prompt webpages became publicly available, the Court only takes judicial notice of these webpages as to their existence on the date the webpages were captured or last accessed.

The Court also takes judicial notice of the redline comparison of the Complaint in *D'Angelo v. FCA*, 3:23-cv-00982-WQH-JLB (S.D. Cal. 2023) and the complaint in *D'Angelo v. Nissan*, 3:23-cv-00980-AJB-AHG (S.D. Cal. 2023). Under Federal Rule of Evidence 201, courts may take judicial notice of "matters of public record," such as court filings, because such records "are readily verifiable." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Finally, to the extent Defendant requests the Court take judicial notice or incorporate by reference the Hunter Declaration, the Court denies Defendant's request. The Hunter Declaration does not contain facts "generally known within the trial court's territorial jurisdiction" or that can "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The contents of the Hunter Declaration are also not alleged in the Complaint.

/ / /

## VI.    DISCUSSION

### A. Standing

Defendant moves to dismiss all claims for lack of Article III standing. Defendant contends that Plaintiffs fail to allege an injury-in-fact, that Plaintiffs lack standing to seek injunctive relief, and that Plaintiffs fail to adequately allege statutory standing to pursue their UCL claim.

#### 1. Injury-in-Fact

Defendant contends that Plaintiffs have not established Article III standing because "they fail to allege any harm—physical, economic, or otherwise—resulting from their 'engagement' with the Chat Feature." (ECF No. 11 at 14.) Defendant contends that "a third-party's collection and analysis of Plaintiffs' data on behalf of and as a tool for a company ... does not bear 'a close relationship' to traditional privacy harms under California law, because Plaintiffs cannot allege that their data was ever publicized or disclosed." *Id.* at 16.

Plaintiffs contend that "the Ninth Circuit categorically rejected the argument that the collection of private data is not an injury in fact." (ECF No. 13 at 10 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020).) Plaintiffs contend that they met their burden of demonstrating an injury-in-fact by alleging that "Plaintiffs engaged in private conversations with [Defendant], and [Defendant] permitted those conversations to be intercepted, recorded, learned, analyzed, and used by a third party" without Plaintiffs' consent. *Id.* at 13.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "Congress [and state legislatures] may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (quoting *Spokeo*, 578 U.S. at 341). However, the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a

concrete harm[.]" *Id.* at 426. Courts "cannot treat an injury as 'concrete' for Article III purposes based only on [the legislature's] say-so." *Id.* (citation omitted); *see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("When a legislature has enacted a 'bare procedural' protection, a plaintiff 'cannot satisfy the demands of Article III' by pointing only to a violation of that provision, but also must link it to a concrete harm.") (quoting *Spokeo*, 578 U.S. at 342)).

In assessing whether a harm is concrete, "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *TransUnion*, 594 U.S. at 424 (quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 274 (2008)). Specifically, a court must consider "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (citation omitted). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" but "does not require an exact duplicate in American history and tradition." *Id.*

"[V]iolations of the right to privacy have long been actionable at common law." *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). The Court of Appeals for the Ninth Circuit has found that the "California legislature intended to protect these historical privacy rights when [it] passed … CIPA." *In re Facebook*, 956 F.3d at 598 (citations omitted). Thus, CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.* (citing *Campbell*, 951 F.3d at 1117–19).

Here, the Complaint alleges that Defendant violated CIPA and the California Constitution's right to privacy by allowing a third party to "secretly intercept in real time, eavesdrop upon, interpret, analyze, store, and use … transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and deeply personal." (ECF No. 1 ¶ 12.) The Complaint alleges that "Defendant was secretly recording [class members'] chat conversations," *id.* ¶ 25, and Plaintiffs' "claims are typical of the class," *id.* ¶ 34. The allegation that Defendant's data collection

practices harmed Plaintiffs' interest in privacy is a "concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598–99 (concluding that plaintiffs' allegations that "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information" was a "concrete injury sufficient to confer standing"); *see Garcia v. Build.com, Inc.*, No. 22-cv-01985-DMS-KSC, 2023 WL 4535531, at *2 (S.D. Cal. July 13, 2023) ("[A]llegations that Defendant secretly intercepted and recorded Plaintiff's chat messages without informing her and without her consent" is "a sufficiently concrete and particularized injury."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1078 (C.D. Cal. 2023) ("Violations of [p]laintiffs' statutory rights under CIPA, [even] without more, constitute injury in fact because instead of a bare technical violation of a statute, … a CIPA violation involves … a violation of privacy rights.") (alteration in original).

Defendant contends that the "single allegation that Plaintiffs 'engaged' with the Chat Feature, without any further allegations as to the contents or existence of communications submitted to the chat feature, including any personal information, is insufficient to establish a protectable privacy interest." (ECF No. 11 at 16.) In support of this contention, Defendant cites *Lightroller v. Jetblue Airways Corp.*, No. 23-cv-00361-H-KSC, 2023 WL 3963823, (S.D. Cal. June 12, 2023). In that case, the court stated that after *TransUnion*, "a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact." *Id.* at *3. The court found that because the plaintiff did not specifically identify the personal information that was allegedly intercepted, the plaintiff's "allegations [were] insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy." *Id.* at *4.

The Court recognizes that there is a disagreement in this District about whether *TransUnion* undermined *In re Facebook*'s holding that a violation of CIPA is sufficient to allege an injury-in-fact. *Compare Garcia*, 2023 WL 4535531, at *3 (allegations that defendant violated CIPA sufficiently alleges an injury-in-fact); *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *7 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs have Article III standing … if they sufficiently allege Defendant violated CIPA

and the California Constitution's right to privacy."); *with Lightroller*, 2023 WL 3963823, at *3 (*In re Facebook*'s holding that CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing" is "untenable in light of the Supreme Court's holding in [*TransUnion*]"). In the absence of further indication that *In re Facebook* is overruled, the Court agrees with *Garcia* that "*TransUnion* does not undermine the reasoning in [*In re Facebook*]." *Garcia*, 2023 WL 4535531, at *3 ("Recently, some courts have held that the reasoning in [*In re Facebook*] was undermined by the Supreme Court's 2021 decision in *TransUnion*, which held that 'Article III standing requires a concrete injury even in the context of a statutory violation…. However, that aspect of *TransUnion*'s holding was not new; it was a reiteration (and direct quote) of the Supreme Court's holding in *Spokeo*, decided in 2016.").

Defendant also contends that Plaintiffs cannot establish a protectable privacy interest because the "layout and interactivity" of the Website show that "Plaintiffs consented to the recording of their website activity and alleged communications via the Chat Feature." (ECF No. 11 at 17.) This argument, however, addresses the merits of Plaintiffs' CIPA and invasion of privacy claims. "As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (internal quotations and alterations omitted); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("In privacy cases, the standing and merits inquiries will often be intertwined…. But in virtually every privacy case, consent will be part of the merits inquiry."). At this stage in the proceedings, Plaintiffs' allegations are sufficient for purposes of Article III standing.

### 2. Injunctive Relief

Defendant contends that Plaintiffs lack standing to seek injunctive relief "because they fail to plausibly allege any likelihood of future or continuing harm." (ECF No. 11 at 32.) Plaintiffs contend that they have standing to seek injunctive relief because "Plaintiffs

clearly alleged that Defendant's conduct is continuing and that Salesforce continues to use Plaintiffs' and putative Class Members' private conversations for its own purposes without Plaintiffs' consent." (ECF No. 13 at 30.)

A plaintiff "must demonstrate standing separately for each form of relief sought." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Laidlaw*, 528 U.S. at 185). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A plaintiff must demonstrate "real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted).

Here, the Complaint alleges that "Salesforce used and uses Plaintiffs' and class members' conversations with Defendant that it intercepted in real time without Plaintiffs' and class members' consent." (ECF No. 1 ¶ 19.) The Complaint further alleges that "[e]ach unsuspecting visitor has their conversations exhaustively analyzed in combination with a vast amount of data organized into numerous attributes that Salesforce has collected about the visitor via its 'Service Cloud' platform." *Id.* ¶ 17. To the extent Plaintiffs allege an injury from the ongoing use of their intercepted data by Defendant and Salesforce, Plaintiffs have adequately alleged a "real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946; *see Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *19 (N.D. Cal. Sept. 23, 2016) (concluding that plaintiff has alleged a "real and immediate threat of repeated injury" from Google's ongoing analysis of data that was intercepted without the plaintiff's consent).

/ / /

/ / /

### 3.  UCL Standing

Defendant contends that Plaintiffs do not have statutory standing to pursue their UCL claim because Plaintiffs fail to allege economic loss. (ECF No. 11 at 32.) Plaintiffs contend that "the economic value of Plaintiffs' and Class Members' data to them is inherent in the fact that they allege that Defendant and Salesforce harvested and 'exploit[ed]' their data 'for financial gain.'" (ECF No. 13 at 29.)

"California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice." *Birdsong v. Apple*, 590 F.3d 955, 960 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code §§ 17200–17210). To establish standing to bring a claim under the UCL, consumers must allege that they "(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Id.* "[B]ecause economic injury is but one among many types of injury in fact, the … requirement that injury be economic renders standing under [the UCL] substantially narrower than federal standing under article III." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011).

To plead an "economic injury," a plaintiff may: "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 323. "That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019).

Here, the Complaint alleges that Defendant and Salesforce sought to "exploit" the data obtained from Plaintiffs' chat messages "for financial gain." (ECF No. 1 ¶¶ 27, 29.) While these allegations support an inference that Plaintiffs' data is valuable to Defendant and Salesforce, they do not support an inference that the data is valuable to Plaintiffs. Accordingly, Plaintiffs fail to adequately allege an economic injury sufficient for UCL standing. *See Bass*, 304 F. Supp. 3d at 1040 (concluding that plaintiff failed to allege a

cognizable injury under the UCL where "plaintiff fail[ed] to allege the economic value [of the intercepted information] *to him*"); *Greenley v. Kochava, Inc.*, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466, at *18 (S.D. Cal. July 27, 2023) ("The relevant inquiry is not whether Defendants can profit from Plaintiff's personal information, but whether Plaintiff himself can profit from his own data.")

Plaintiffs adequately allege an injury-in-fact sufficient for Article III standing and to seek injunctive relief. The Court denies the Motion to Dismiss on these grounds and grants the Motion to Dismiss for lack of UCL standing.

**B. Motion to Dismiss for Failure to State a Claim**

Plaintiffs bring claims under CIPA for violations of Cal. Penal Code § 631(a) and § 632.7, as well as a claim under the California Constitution.[1] Defendant moves to dismiss all three claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**1. Cal. Penal Code § 631(a)**

Section 631(a) aims to protect the right of privacy by preventing the "eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Section 631(a) imposes liability on any person who:

> [1] by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

---

[1] The Court dismisses Plaintiffs' claim for violation of the UCL as set forth above.

[4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]

Cal. Penal Code § 631(a). In interpreting the statute, the California Supreme Court has stated that § 631(a) contains three operative clauses, which create three distinct grounds for liability. They include: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). Section 631(a) contains a fourth basis of liability for any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a).

Plaintiffs allege that Defendant is liable under the fourth clause of § 631(a) for aiding and abetting Salesforce in violating the first, second, and third clauses of § 631(a).

### a. Clause One

To state a claim for derivative liability under clause one, Plaintiffs must allege that Salesforce "intentionally tap[ped], or ma[de] any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Penal Code § 631(a).

Defendant contends that the first clause of § 631(a) "concerns telephonic wiretapping, and does not apply to the context of the internet." (ECF No. 11 at 25 (internal quotation marks and citations omitted).) In their Opposition, Plaintiffs concede that "the first clause of Section 631(a) does not apply to internet connections." (ECF 13 at 18.) Because Plaintiffs allege that that they used "smart phones … and/or wifi-enabled tablets and laptops" to communicate with the Defendant through the internet, (ECF No. 1 ¶ 23), Plaintiffs cannot state a predicate claim under clause one.

/ / /

### b.  Clause Two

To state a claim for derivative liability under clause two, Plaintiffs must allege that Salesforce "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[ed] to read, or to learn the contents or meaning of any message, report, or communication while the same [was] in transit or passing over any wire, line, or cable, or [was] being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Defendant contends that Plaintiffs fail to state a claim under clause two on the following grounds: (1) Plaintiffs consented to the alleged eavesdropping; (2) Plaintiffs fail to allege how a third party intercepted their communications; and (3) Plaintiffs fail to allege the "contents" of the communications allegedly intercepted.

### i.     Consent

Defendant contends that the "layout and interactivity" of the Website "establishes that Plaintiffs consented to the recording of their website activity and alleged communications via the Chat Feature." (ECF No. 11 at 17.) Plaintiffs contend that "no consent to recording or sharing of chat conversation data was sought via agreement to privacy policies or other terms." (ECF No. 13 at 16.)

Clause two of § 631(a) prohibits eavesdropping "without consent of all parties to the communication." Cal. Penal Code § 631(a). The question of whether a plaintiff consented to eavesdropping is governed by contract law. *See In re Facebook*, 402 F. Supp. 3d at 789. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). "One such principle is the requirement that '[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Id.* (citation omitted).

The Website's privacy policy, of which the Court has taken judicial notice, states: "[I]f you contact us by email, mail, phone, chat or otherwise regarding the Services, we collect and maintain a record of your contact details, communications, and our responses." (Exs. 1–2 to Hunter Decl., ECF No. 11-1.) Defendant contends that, based on the Website's

chat feature icon—which appears to inform the user that "[b]y pressing the 'Start Chat' button you agree to have your personal data processed as described in our **Privacy Policy**"—Plaintiffs "expressly consented" to third-party eavesdropping by engaging in the chat feature. (ECF No. 11 at 18 (quoting Ex. 6 to Hunter Decl., ECF No. 11-1).) The screenshot of the chat feature icon, however, was taken as late as August 2, 2023, well after May 26, 2023, when the Complaint was filed. (Hunter Decl., ECF No. 11-2 ("I last accessed this website on August 2, 2023, and took a screenshot of the website page at that time.").) The screenshot of the chat feature icon therefore does not necessarily represent what Plaintiffs saw when engaging with the chat, and does not contradict Plaintiffs' allegation that they did not consent to the eavesdropping of their chat conversations by a third party.

Defendant further contends that the Website "provides notice of its Privacy Policy to users multiple times and in multiple locations through a user's activity on the Website." (ECF No. 11 at 17 (citing Exs. 1–4, 6 to Hunter Decl., ECF No. 11-1).) Privacy policies, however, do not bind users "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent." *Nguyen*, 763 F.3d at 1178–79. "[E]ven close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 1179.

Finally, Defendant contends that Plaintiffs "independently fail to allege *facts* demonstrating that they did not consent to the conduct at issue." (ECF No. 11 at 17 n.3.) The Complaint alleges that "Defendant did not inform Class Members" that it allowed Salesforce to collect and analyze their customer-support interactions and that "Defendant did not obtain Class Members' express or implied consent to wiretap or allow Salesforce to eavesdrop on visitor conversations." (ECF No. 1 ¶¶ 25, 28.) For purposes of Rule 12(b)(6), these allegations are sufficient. *See D'Angelo*, 2023 WL 7006793, at *7 (concluding that plaintiffs met their burden to plead lack of consent by alleging that "they were not informed of the chat recording or interception when they used the [w]ebsite" and

that "they did not give their express or implied consent to allow [a third party] to learn of their communications with [the website]"); *Esparza v. Kohl's, Inc.*, No. 23-cv-01988-AJB-KSC, 2024 WL 1152732, at *3 (S.D. Cal. Mar. 18, 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. [] That is sufficient at this stage."). Plaintiffs have adequately pled that they did not consent to eavesdropping by Salesforce.

### ii.   Interception

Defendant contends that Plaintiffs fail to allege how another entity contemporaneously "read one of [their] communications while it was still in transit—i.e., before it reached its intended recipient." (ECF No. 11 at 26 (citations omitted).) Defendant contends that Plaintiffs did not "clearly identify" the third party who engaged in the alleged interception. *Id.* at 23. Plaintiffs contend that the Complaint adequately alleges that Salesforce used "automatic routing software" to intercept the chat conversations, and that under Ninth Circuit caselaw, "intercept" means "acquisition contemporaneous with transmission." (ECF No. 13 at 23–24.)

The second clause of § 631(a) prohibits the interception of the contents of a communication while "in transit." Cal. Penal Code § 631(a). Unlike the first clause, the second clause is not limited to communications passing over "telegraph or telephone wire, line, cable, or instrument," but also applies to internet communications. *Id.* § 631(a); *see Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) ("[C]ourts interpreting the second clause have generally held that it is not limited to communications sent via telephone or telegram wire, line, or cable."); *Greenley*, 2023 WL 4833466, at *16 ("[C]ourts have concluded that the first clause does not apply to internet communications, but the second clause does.").

Here, the Complaint alleges that Defendant allows Salesforce "to secretly intercept in real time" chat communications on the Website by "embedd[ing]" code that "directs [chat] communications to be routed directly to Salesforce." (ECF No. 1 ¶¶ 12–13.) Courts

in this circuit have found similar allegations sufficient to withstand a motion to dismiss. *See, e.g.*, *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (plaintiff sufficiently pled that communications were intercepted in transit by alleging that defendant uses a third-party service to "covertly embed[] code into its chat feature that automatically records and creates transcripts of all such private conversations" and "allows at least one third party ... to secretly intercept in real time, eavesdrop upon, and retain transcripts of [d]efendant's chat communications with unsuspecting website visitors"); *D'Angelo*, 2023 WL 7006793, at *8 ("Plaintiffs successfully plead that Vergic intercepted Plaintiffs' chats with JC Penney" where "Plaintiffs allege that the JC Penney Website chat feature operates through Vergic's servers, allowing real-time interception of the communication."); *Campell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case."). Further, Plaintiffs adequately identified Salesforce as the third party that allegedly intercepted the chat communications. (*See* ECF No. 1 ¶ 12 ("To enable the eavesdropping, Defendant allows at least one independent Third Party (on information and belief, 'Salesforce') to secretly intercept … Defendant's chat communications with unsuspecting website visitors[.]"), ¶ 13 ("Chat communications on the Website are intercepted by Salesforce[.]").)

Defendant contends that Plaintiffs fail to allege "why" or "how" they engaged with the chat feature, and that Plaintiffs do not specify exactly "when" they visited the Website. (ECF No. 11 at 22–23.) Defendant contends that Plaintiffs also do not allege that they are "among those generic visitors" who sent messages via the chat feature. *Id.* at 22. The Complaint alleges: "Within the statute of limitations period, Plaintiffs visited the Website" and "engaged with the 'chat' feature of the Website to communicate with Defendant." (ECF No. 1 ¶ 23.) The Complaint further alleges that "Salesforce used and uses Plaintiffs' and class members' conversations with Defendant that it intercepted in real time." *Id.* 1 ¶ 19. These allegations, when accepted as true, support a plausible inference that Plaintiffs used the chat feature within the relevant statutory time period. *See Twombly*, 55 U.S. at

545 ("[A] complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations[.]"). Whether Plaintiffs allege "why" they engaged with the chat feature is immaterial under § 631(a). *See* Cal. Penal Code § 631(a).

Plaintiffs adequately allege that their chat communications were intercepted in transit.

### iii.    Contents

Defendant contends that the information Salesforce allegedly received did not constitute the "contents" of a communication, but was instead "record information" about Plaintiffs and their chat messages. (ECF No. 11 at 27.) Plaintiffs contend that Salesforce received transcripts of their "chat messages," which qualify as contents within the meaning of § 631(a). (ECF No. 13 at 19.)

Section 631(a) prohibits the interception of the "contents or meaning" of a communication while in transit. Cal. Penal Code § 631(a). "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (citation omitted). The Ninth Circuit has held that "contents" under the Wiretap Act "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information "includes, among other things, the 'name,' 'address,' and 'subscriber number or identity' of 'a subscriber to or customer of such service.'" *Id.* at 1104 (quoting 18 U.S.C. § 2703(c)).

Here, the Complaint alleges that Plaintiffs used the "chat feature" of the Website to exchange "chat messages" with Defendant's representatives, which were "recorded" and "transcribed" by Salesforce in "real time," and that Salesforce read or attempted to read or learn the meaning of their "chat conversations." (ECF No. 1 ¶¶ 12, 14, 21, 23, 25–26.) These allegations, when accepted as true, support a plausible inference that Salesforce recorded Plaintiffs' chat messages, which qualify as the "contents" of a communication under § 631(a). *See Esparza*, 2024 WL 1152732, at *5 ("Plaintiff has sufficiently alleged

facts plausibly showing Defendant recorded Plaintiff's content communications with Defendant by recording, among other things, a transcript of Plaintiff's interactions with Defendant's website.").

Plaintiffs adequately allege that Salesforce violated clause two of § 631(a).

### c.  Clause Three

To state a claim for derivative liability under clause three, Plaintiffs must allege that Salesforce "use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any way, any information [] obtained [in violation of clause one or clause two]." Cal. Penal Code § 631(a); *Tavernetti*, 22 Cal. 3d at 192 (stating that clause three prohibits "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities").

Defendant contends that that Plaintiffs fail to state a claim under clause three because Plaintiffs' allegation that Salesforce used the transcripts for "its own purposes" is conclusory. (ECF No. 11 at 27.) The Complaint alleges that Salesforce "interpret[s], analyze[s], and also use[s] [the] intercepted conversations" for Salesforce's own "business purposes," (ECF No. 1 ¶ 21) and that Salesforce "exploit[s] that information for financial gain," *id.* ¶ 27. These allegations do not simply state that Salesforce uses the chat communications for its "own purposes," but explain the basis for which Salesforce uses the data: monetary gain. The allegations are therefore not impermissibly conclusory. *See Esparza*, 2024 WL 1152732, at * 7 (allegations that a chat service provider "profit[s] from secretly exploiting [its] ability to identify anonymous individuals who have visited Defendant's website" lead to a plausible inference that the chat service provider is using the information for its own purposes). Plaintiffs adequately allege that Salesforce violated clause three of § 631(a).

### d.  Clause Four

Clause four of § 631(a) imposes liability on anyone who aids and abets another in violating at least one of the three operative clauses. *See* Cal. Penal Code § 631(a). There is, however, "an exemption from liability for a person who is a 'party' to the

communication." *In re Facebook*, 956 F.3d at 607; *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (Section 631(a) "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Thus, a party to a communication is not subject to derivative liability if it records a conversation, and then plays that recording to a third party. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975). "The party exception must be considered in the technical context of [a] case." *In re Facebook*, 956 F.3d at 607.

Defendant contends that "a third-party vendor that is deemed to merely facilitate customer chats as an extension of the company does not trigger derivative liability under § 631(a)." (ECF No. 11 at 27.) Plaintiffs contend that "Salesforce operated as far more than a mere extension" of Defendant because Salesforce "harvests data from the chat transcripts it intercepts, eavesdrops upon, interprets, analyzes, stores, and uses for a variety of its own purposes." (ECF No. 13 at 22.)

Both *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (Ct. App. 1975), and *Ribas v. Clark*, 38 Cal. 3d 355 (1985), are instructive. In *Rogers*, the defendant used a tape recorder jack installed on his telephone to surreptitiously record a conversation with another person, and played that recording to a third party. *Rogers*, 52 Cal. App. 3d at 897–98. The California Court of Appeal held that the defendant's conduct did not violate § 631(a) because a party to a conversation cannot eavesdrop on his own conversation. *Id.* at 898–99. By contrast, in *Ribas*, the California Supreme Court concluded that § 631(a) was violated where a person asked a friend to use a telephone extension to eavesdrop on a conversation with her spouse. *Ribas*, 38 Cal. 3d at 358, 361. The court reasoned that the friend could be held liable as a third-party eavesdropper because § 631(a) distinguishes "between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device." *Id.* at 360–61. The court stated that "such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements," and thus the California Legislature "could

reasonably have contemplated that section 631, subdivision (a), would prohibit the type of surreptitious monitoring of private conversations alleged here." *Id.* at 361.

In the present case, the Complaint alleges that Defendant allows Salesforce "to secretly intercept in real time [and] eavesdrop upon" Website visitors' chat conversations with Defendant. (ECF No. 1 ¶ 12.) Thus, as in *Ribas*, the Complaint alleges that Defendant allows a third party to eavesdrop on its communications with Plaintiffs in real time, thereby "simultaneous[ly] disseminat[ing]" the chat communications "to an unannounced second auditor." *Ribas*, 38 Cal. 3d at 360–61. Further, unlike the tape recorder in *Rogers*, Salesforce is not a mechanical tool that allows Defendant to record chat conversations, but is a separate corporate entity paid by Defendant to "interpret, analyze, store, and use … transcripts of Defendant's chat communications." (ECF No. 1 ¶ 12.)

In Reply, Defendant contends that Salesforce is more similar to the tape recorder in *Rogers* because Salesforce has no "independent ability" to use the collected information for a purpose other than to benefit Defendant. (ECF No. 14 at 9.) In support of this contention, Defendant relies on *Yockey v. Salesforce*, No. 22-cv-09067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023). There, the court held that a chat service provider, like Salesforce, qualifies as a third-party eavesdropper if it "ha[s] the capability to use its record of the interaction for any other purposes." *Yockey*, 2023 WL 5519323, at *5 (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). The court concluded that because the chat service provider at issue "ha[d] no independent ability to divulge its recording for any other purpose but that of [the company that owns the website]," it is more like the tape recorder in *Rogers*. *Id.*; *see Garcia*, 2023 WL 4535531, at *5 ("In cases where courts have found software companies to be third-party eavesdroppers, those third parties had mined information from other websites and used that information for their own purposes.").

Here, by contrast, Plaintiffs state facts supporting Salesforce's "capability to use its record of the interaction for [another] purpose." *Yockey*, 2023 WL 5519323, at *5. The Complaint alleges that Salesforce "harvests" and "exploit[s]" the data collected from the

chat conversations for "financial gain," and "analyze[s]" the intercepted conversations for Salesforce's own "business purposes." (ECF No. 1 ¶¶ 15, 21, 27.) These allegations, when accepted as true, support a reasonable inference that Salesforce is able to—and does—use the information collected from the chat conversations for its own benefit. Based on the allegations in the Complaint, Salesforce is more akin to the eavesdropping friend in *Ribas* than the tape recorder in *Rogers*, and is therefore a third party within the meaning of § 631(a). *See Valenzuela v. Nationwide Mut. Ins. Co.*, No. 2:22-cv-06177-MEMF-SK, 2023 WL 5266033, at *7 (C.D. Cal. Aug. 14, 2023) (concluding that the defendant-website's alleged actions to facilitate a software provider's eavesdropping are akin "to a party allowing a third part to listen live, like in *Ribas*"); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, *2 (N.D. Cal. Oct. 23, 2019) ("Although [defendant] cannot be liable for eavesdropping on its own communications with [plaintiff], the complaint adequately alleges that [defendant] violated section 631 by enabling [the third-party software provider's] wrongdoing.").

The conclusion that a software provider can qualify as a third-party eavesdropper is also supported by *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). In that case, the Ninth Circuit held that Facebook was not a party to a communication between a user and a third-party website containing Facebook plug-in software, where the plug-in was "able to replicate and send the user data to Facebook through a separate, but simultaneous, channel in a manner undetectable by the user." *Id.* at 596. The court reasoned that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

Accordingly, Plaintiffs adequately allege that Defendant aided and abetted Salesforce in violating clause two and clause three of § 631(a).

/ / /

/ / /

/ / /

### 2.  Cal. Penal Code § 632.7

Plaintiffs' second cause of action asserts violations of CIPA pursuant to Cal. Penal Code § 632.7. Section 632.7(a) states:

> Every person who, without the consent of all the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a land telephone, two cordless telephones and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine.

Cal. Penal Code § 632.7(a). Section 632.7(d)(3) defines "communication" as "includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile." Cal. Penal Code § 632.7(b)(3).

Defendant contends that Plaintiffs' § 632.7 claim fails as a matter of law because § 632.7(a) applies only to communications between telephones. Plaintiffs contend that they need not allege that Defendant used a telephonic device because "the Central District has held that both federal and state courts have characterized section 632.7 as prohibiting the 'intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless phone.'" (ECF No. 13 at 25 (quoting *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 783 (C.D. Cal. 2023).)

"Statutory interpretation under California law begins with the words themselves, giving them 'their plain and commonsense meaning,' because the words of a legal text 'generally provide the most reliable indicator of [the enacting body's] intent.'" *Herrera v. Zumiez*, 953 F.3d 1063, 1071 (9th Cir. 2020) (quoting *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007)). "If there is no ambiguity in the language, [courts] presume the Legislature meant what it said and the plain meaning of the statute governs." *Murphy*, 40 Cal. 4th at 1103 (citations omitted).

Here, § 632.7(a) concerns communications transmitted between the following devices: (1) "two cellular radio telephones," (2) "a cellular radio telephone and a landline telephone," (3) "two cordless telephones," (4) "a cordless telephone and a landline

26

telephone," and (5) "a cordless telephone and a cellular radio telephone." Cal. Penal Code § 632.7(a). The unambiguous interpretation of § 632.7(a) is that it regulates communications between telephones. *See Valenzuela*, 2023 WL 3707181, at *6 ("[Section] 632.7 unambiguously limits its reach to communications *between* various types of telephones."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1069 (C.D. Cal. 2023) ("The unambiguous meaning of the statute is thus that it only applies to communications involving two telephones."). Additionally, while the California Supreme Court has not addressed whether § 632.7(a) applies to computers, it recently stated that § 632.7(a) prohibits the interception of communications transmitted between "a cellular or cordless telephone and another telephone." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021); *see Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1469 (Ct. App. 2014) (stating that the "type of telephone … used to receive the subject call" is an element of proof under § 632.7). This interpretation is also supported by the statute's legislative history. The California Supreme Court has found that, in enacting § 632.7, the California Legislature was "[r]esponding to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones[.]" *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) ("It protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved."). Based on the statute's plain text as well as caselaw within California and the Ninth Circuit, the Court finds that § 632.7(a) applies to communications transmitted between telephones.

Here, the Complaint alleges that "Plaintiffs and the class members used smart phones (cellular telephones with integrated computers to enable web browsing) and/or wifi-enabled tablets and laptops that use a combination of cellular and landline telephony and engaged with the 'chat' feature of the Website to communicate with Defendant." (ECF No. 1 ¶ 23.) The Complaint alleges that, "[a]s such, class member conversations with Defendant were transmitted from 'cellular radio telephones' and/or 'landline telephones.'" *Id.* Even accepting these allegations as true, the Complaint fails to allege that Defendant

used a telephone to communicate with Plaintiffs. In fact, in their Opposition, Plaintiffs concede that Defendant received the chat communications using "computer equipment." (ECF No. 13 at 25.)

Plaintiffs contend that the Court should broadly construe the term "landline telephone" to encompass Defendant's computer equipment. (ECF No. 13 at 25.) In support of this contention, Plaintiffs cite *Apple v. Superior Court*, 56 Cal. 4th 128 (2013), where the Supreme Court of California stated: "In construing statutes that predate their possible applicability to new technology, courts have not relied on wooden construction of their terms. Fidelity to legislative intent does not 'make it impossible to apply a legal text to technologies that did not exist when the text was created.'" *Id.* at 137 (citation omitted). Plaintiffs contend that because the internet works through networks of "telephone lines," devices that require internet access could be construed as a landline form of telephone communication. (ECF No. 13 at 27.)

The statute at issue, however, did not "predate" internet technology. The California Legislature has amended CIPA several times, and amended § 632.7 most recently in 2022. *See* Cal Pen. Code § 632.7. The fact that the Legislature had an opportunity to extend § 632.7 to internet technology, but chose not to, is indicative of its intent not to expand the provision. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (finding that the Legislature's intent "to take account of privacy issues raised by the increased use of cellular and cordless telephones" was evidenced through their amendments to CIPA); *Licea*, 659 F. Supp. 3d at 1080 ("The fact that the Legislature has had an opportunity to amend [CIPA] to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections.").

Plaintiffs contend that a more expansive interpretation of the statute is also supported by the language of § 632.7(d)(3), which defines the term "Communication," as "includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile." (ECF No. 13 at 27 (quoting Cal. Penal Code § 632.7(d)(3).) Plaintiffs contend that because "communications transmitted by 'data,' 'image,' or 'facsimile,' are within the

scope of section 632.7, this strongly implies that the Legislature intended the term, 'landline telephone,' to be broadly construed." *Id.* However, while the definition of communication may protect a broad range of information transmitted over telephones, it does not expand the types of devices covered by § 632.7(a). *See Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *16 (E.D. Cal. Mar. 30, 2023) ("[T]he inclusion of a broad definition of communication [in § 632.7] does not support Plaintiff's conclusion that the Legislature meant to include new and emerging technologies, but rather that it meant to protect a broad range of information transmitted over telephone technology."); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-cv-09042-JSC, 2023 WL 3707181, at *6 (N.D. Cal. May 24, 2023) ("Plaintiff argues the statute contemplates internet communications because it defines communications as including 'voice, data, or image[s], including facsimile.'… That provision defines *communications.* It does not modify the devices regulated under § 632.7.").

Finally, Plaintiffs contend that the Court should expansively read § 632.7 given "the California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections." (ECF No. 13 at 28 (quoting *In re Google Inc.*, No. 13–MD–02430–LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013).) But the case that Plaintiffs cite for this proposition, *In re Google*, also states that an expansive interpretation of the statute is warranted only where "such a reading would not conflict with the statutory scheme." *In re Google*, 2013 WL 5423918, at *21. Here, Plaintiffs proposed interpretation—that § 632.7 is not limited to telephones but applies to all internet-based communication devices—conflicts with the plain text of the statute.

Because the plain reading of § 632.7(a) requires a communication transmitted between two telephones, Plaintiffs fail to state a plausible claim for relief. Accordingly, the Motion to Dismiss is granted as to Plaintiffs' § 632.7 claim.

### 3.  Invasion of Privacy Under the California Constitution

Plaintiffs bring a claim for invasion of privacy under the California Constitution. To state a claim for invasion of privacy, a plaintiff must allege (1) a reasonable expectation of

privacy, and (2) that the intrusion was highly offensive. *In re Facebook*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

Defendant contends that Plaintiffs' conduct is "inconsistent" with a reasonable expectation of privacy because Plaintiffs "concede they visited [Defendant's] website and voluntarily 'engaged' with [Defendant's] Chat Feature." (ECF No. 11 at 30.) Defendant contends that Plaintiffs' allegation that "this invasion of privacy is serious in nature and scope and constitutes a breach of social norms in the digital age" is conclusory. *Id.* at 31 (quoting ECF No. 1 ¶ 66).

Plaintiffs contend that they have a reasonable expectation of privacy in "intimate or sensitive personally identifiable information" that is collected without their consent. (ECF No. 13 at 30 (citation omitted).) Plaintiffs contend that they need not "plead how 'sensitive,' 'personal' or 'confidential' the information provided in the chat communications was" to survive a motion to dismiss. *Id.* at 29.

To determine whether a reasonable expectation of privacy exists, courts "consider whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *In re Facebook*, 956 F.3d at 601–02 (quoting *Hernandez*, 47 Cal. 4th at 286). This assessment requires courts to consider the "customs, practices, and circumstances surrounding a defendant's particular activities," including the manner in which data is collected, the amount and sensitivity of the data, and the defendant's representations to users. *Id.* at 602 (citing *Hill*, 7 Cal. 4th at 36).

In *In re Facebook*, the Ninth Circuit applied these factors to conclude that Facebook users had a reasonable expectation of privacy in browsing-history data surreptitiously collected by Facebook after the users logged out of their Facebook accounts. The court first reasoned that the manner in which the data was collected "violates social norms" because Facebook affirmatively represented "that logged-out user data would not be collected, but then collected it anyway." *In re Facebook*, 956 F.3d at 602. The court also stated that the "amount of data was significant" based on the allegations that Facebook acquired an "enormous amount of individualized data" by tracking users' browsing histories. *Id.* at 603.

Finally, the court stated that "the nature of the allegedly collected data is also important" because browsing data could divulge "sensitive" information about a user, including their personal interests and habits. *Id.*

Conversely, courts are more reluctant to find a reasonable expectation of privacy when the data collected is not sensitive. For example, the Ninth Circuit stated that there is no reasonable expectation of privacy in URLs that reveal only basic identification and address information about a user. *In re Zynga*, 750 F.3d at 1108–09 ("[C]ourts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)."); *see In re Facebook*, 956 F.3d at 605 (distinguishing *In re Zynga* on the ground that the URL's at issue there included "only basic identification and address information" as opposed to "a search term or similar communication made by the user"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (Yahoo users had no reasonable expectation of privacy in the contents of emails broadly, but only in the "confidential" portions).

In the present case, Plaintiffs do not allege that Defendant set out an expectation that it would not collect chat conversations or allow a third party to do so, nor do Plaintiffs allege facts to suggest that Defendant or a third party continued to collect their data after they exited the Website, as was the case in *In re Facebook*. Further, while the Complaint alleges that Defendant collects a "vast" amount of data from the chat conversations, (ECF No. 1 ¶ 17), Plaintiffs fail to plead any facts to suggest that this data was sensitive. The allegations that Defendant allowed a third party to collect, among other things, the user's account name, IP address, geographic location, and site the user previously visited does not give rise to an invasion of privacy. *See In re Zynga*, 750 F.3d at 1108–09 (concluding that there is no reasonable expectation of privacy in the URL of a website the plaintiff had previously visited or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (users had no reasonable expectation of privacy in their geolocation while using the website of the defendant company); *In re Vizio, Inc.*

*Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications."); *Esparza*, 2024 WL 1152732, at *8 (finding allegations that a third-party software provider captured plaintiff's "personal details," "browsing history," and "IP address" to be insufficient to demonstrate that plaintiff suffered a "serious invasion of a protected privacy interest").

Plaintiffs contend that they suffered an invasion of privacy because they did not consent to Defendants conduct. However, allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy. *See In re Yahoo*, 7 F. Supp. 3d at 1041 (rejecting the argument that "an allegation of lack of consent suffices to state a privacy claim"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. 2012) ("Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure [of information including device identifier number, personal data, and geolocation information] does not constitute an egregious breach of social norms.").

The Court finds that Plaintiffs fail to adequately allege a reasonable expectation of privacy. The Motion to Dismiss is granted with respect to the invasion of privacy claim.

## VII.   CONCLUSION

IT IS HEREBY ORDERED the Motion to Dismiss (ECF No. 11) is granted in part and denied in part. The Motion to Dismiss is granted without prejudice with respect to Plaintiffs' UCL claim and § 632.7 claim. The Motion to Dismiss is otherwise denied.

IT IS FURTHER ORDERED that no later than twenty (20) days from the date this Order is filed, Plaintiffs may file a first amended complaint that addresses the deficiencies identified in this Order. If no first amended complaint is filed, Defendant shall file an answer to the Complaint no later than forty (40) days from the date this Order is filed.

Dated:  March 28, 2024

Hon. William Q. Hayes
United States District Court